IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

JAMES WALKER and
KATHLEEN WALKER,

      Plaintiffs,

vs.                                  CASE NO.:

NATIONWIDE INSURANCE
COMPANY OF FLORIDA,

      Defendant.
_____/

**PLAINTIFFS' COMPLAINT FOR VIOLATION OF FLORIDA'S UNFAIR INSURANCE TRADE PRACTICES ACT, F.S. §626.9541(1) AND BAD FAITH PER F.S. §624.155**

      Plaintiffs, JAMES WALKER and KATHLEEN WALKER ("MR. and MRS. WALKER"), by and through their undersigned counsel, hereby file this their Complaint against Defendant, NATIONWIDE INSURANCE COMPANY OF FLORIDA ("NATIONWIDE"). As grounds therefore, MR. and MRS. WALKER state as follows:

      1.      The amount in controversy in this action exceeds the sum of Fifteen Thousand and 00/100 ($15,000.00) Dollars, exclusive of pre-judgment interest, court costs, and attorneys' fees.

      2.      At all times relevant hereto, MR. and MRS. WALKER were and are residents of Pasco County, Florida, and own the real property located at 8645 Pampa Way, Port Richey, Florida.

      3.      At all times relevant hereto, NATIONWIDE, was and is a foreign corporation, licensed to conduct business in the state of Florida.

5. In consideration of the premium paid to it by MR. and MRS. WALKER, NATIONWIDE issued to MR. and MRS. WALKER in Port Richey, Pasco County, Florida, a Homeowners policy of insurance, Policy No. 7709HO802960 ("The Policy"), which was in full force and effect at the time loss and damage occurred as a result of a sinkhole and/or sinkhole activity to the insured home located at 8645 Pampa Way, Port Richey, Pasco County, Florida ("The Insured Property"). A copy of The Policy is attached as Exhibit "A".

6. On or around February 14, 2006, The Insured Property suffered damages as a result of sinkhole and/or sinkhole activity.

7. After their February 14, 2006, sinkhole loss, MR. and MRS. WALKER submitted a claim to NATIONWIDE seeking compensation for the sinkhole loss to The Insured Property under The Policy.

8. Thereafter, in a letter dated January 9, 2007, NATIONWIDE sent MR. and MRS. WALKER a "reservation of rights" letter stating that it needed to conduct an investigation into their loss (attached as Exhibit "B").

9. On March 2, 2007, after MR. and MRS. WALKER reported their loss, NATIONWIDE sent a letter to the Insureds notifying them that it would not renew their Policy (a copy of NATIONWIDE'S March 2, 2007 letter and its Notice are attached as Composite Exhibit "C").

10. As of March 2, 2007, NATIONWIDE knew that MR. and MRS. WALKER had an open claim, which it was in the process of investigating, for damage to The Insured Property caused by sinkhole and/or sinkhole activity.

11. As part of its investigation, NATIONWIDE retained HSA Engineers & Scientists ("HSA") to perform a subsidence investigation to determine the cause of the damage to The Insured Property.

12. HSA prepared a written report of its findings and conclusions of its subsidence evaluation of The Insured Property dated April 4, 2007 (attached as Exhibit "D").

13. In its April 4, 2007, report, HSA stated:

> [t]he cause of damage is not sinkhole activity and that the analyses and tests performed were of sufficient scope to eliminate sinkhole activity as a cause of damage.

14. By a letter dated June 21, 2007, NATIONWIDE informed MR. and MRS. WALKER that NATIONWIDE was denying their insurance claim for damages at The Insured Property as a result of sinkhole activity (attached as Exhibit "E").

15. Given their concerns with the propriety of the testing performed by HSA, and the report prepared by HSA and adopted by NATIONWIDE, MR. and MRS. WALKER retained the services of N.S. Nettles & Associates, Inc., a geotechnical company, to conduct a subsurface investigation. A copy of Mr. Nettles' report dated September 20, 2007 is attached as Exhibit "F".

16. Despite the conclusions of HSA, sinkhole activity did exist beneath MR. and MRS. WALKER'S property, which was insured peril, and which caused damages to The Insured Property.

17. MR. and MRS. WALKER complied with all conditions precedent to filing this action by sending a Civil Remedy Notice of Insurer Violation to NATIONWIDE and

the Florida Department of Financial Services, dated October 24, 2007 (attached as Exhibit "G" and all allegations contained therein are hereby incorporated by reference).

18. The Florida Department of Financial Services received MR. and MRS. WALKER'S Civil Remedy Notice assigned an acceptable date of December 6, 2007, beginning the sixty (60) day time period required by Florida law for NATIONWIDE to respond to the notice (attached as Exhibit "H").

19. On December 13, 2007, NATIONWIDE responded to the Civil Remedy Notice of Insurer Violation (attached as Exhibit "I").

20. In its December 13, 2007, letter to the Florida Department of Financial Services (Exhibit "I"), NATIONWIDE stated that:

> Of equal if not greater significance is that the fact that Nationwide properly investigated and adjusted Complainants' alleged sinkhole claim.
>
> \*   \*   \*   \*   \*
>
> As provided above, the claim was properly denied so that there are no monies due and owing.

21. The above statements to the Florida Department of Financial Services and MR. and MRS. WALKER were wrong, and NATIONWIDE knew or should have known that the statements were wrong, and that it wrongfully denied MR. and MRS. WALKER'S claim when this statement was made.

22. As a result of NATIONWIDE'S failure to pay MR. and MRS. WALKER'S contract damages, its wrongful coverage decisions, and other wrongful conduct, on October 24, 2007, MR. and MRS. WALKER filed a Complaint alleging Breach of Contract against NATIONWIDE.

23. In response, on or about November 21, 2007, NATIONWIDE filed its answer and affirmative defenses to the Plaintiffs' lawsuit and continued to deny any

liability for the claim and damages for a period of sixteen (16) months. (See attached Exhibit "J").

24. Despite NATIONWIDE'S own expert's options that sinkhole activity may be present, NATIONWIDE continued to deny any liability for the claim and damages during the litigation until approximately three (3) weeks before the trial on the Breach of Contract matter was to begin on February 23, 2009.

25. On or about February 6, 2009, NATIONWIDE unconditionally admitted coverage and issued a payment to MR. and MRS. WALKER in the amount of $206,656.00 for the damages due and owing MR. and MRS. WALKER under Coverage "A" of The Policy (a copy of NATIONWIDE'S check is attached as Exhibit "K"). Additionally, NATIONWIDE made a payment to MR. and MRS. WALKER in the amount of $63,185.70 via a check dated May 22, 2009 (a copy of NATIONWIDE'S May 28, 2009, transmittal letter and check is attached as Composite Exhibit "L"). NATIONWIDE'S post-suit payments were a "confession of judgment", and was the equivalent of a judgment in favor of MR. and MRS. WALKER on their disputed claim.

26. MR. and MRS. WALKER were the prevailing party against NATIONWIDE as, post-suit, NATIONWIDE paid their contract damages which was the subject of their Complaint filed against NATIONWIDE for breach of contract. Such payments were a "confession of judgment" and MR. and MRS. WALKER fully resolved their underling claim and lawsuit, resolving the issues of liability and damages in a manner favorable to them.

27. In denying MR. and MRS. WALKER'S claim, based in part on its wrongful coverage decisions, NATIONWIDE engaged in numerous improper claims handling practices in violation of industry standards recognized by NATIONWIDE and throughout

the insurance industry for the adjustment, handling, and payment of claims as well as violations of Florida law, including Florida Statute §624.155, §626.9541, and provisions of the Florida Administrative Code.

28. Florida Statute §624.155 requires NATIONWIDE to treat its Insureds with honesty, fairness, and with due regard for their interests.

29. Pursuant to Florida Statute §624.155(1)(b)(1), NATIONWIDE had a duty to attempt in good faith to settle the claim when, under all the circumstances, it could and should have done so had it acted fairly and honestly towards its Insureds and with due regard for the Insureds' interests. NATIONWIDE violated this duty in the handling of Plaintiffs claim in a number of ways, including but not limited to the following:.

(a) NATIONWIDE wrongfully failed and/or refused to thoroughly, accurately, and completely investigate and evaluate MR. and MRS. WALKER'S insurance claim for damages;

(b) NATIONWIDE wrongfully failed to respond to MR. and MRS. WALKER'S request for a certified copy of The Policy within fourteen (14) days, pursuant to Florida Statutes.

(c) NATIONWIDE wrongfully denied coverage for the loss and damages that occurred as a result of a covered peril under the policy.

(d) NATIONWIDE wrongfully delayed the proper adjustment and payment of the claim despite the N.S. Nettles' report confirming sinkhole activity.

(e) NATIONWIDE wrongfully did not create appropriate guidelines for the proper investigation, adjustment and payment of MR. and MRS. WALKER'S insurance claim;

(f)  NATIONWIDE wrongfully did not follow appropriate guidelines to thoroughly, accurately, and completely investigate, evaluate and pay MR. and MRS. WALKER'S insurance claim;

(g)  NATIONWIDE wrongfully cancelled MR. and MRS. WALKER'S Insurance Policy.

(h)  NATIONWIDE wrongfully retained outcome orientated engineers and geologist to provide opinions regarding the cause of damages to the Insured Property.

(i)  NATIONWIDE wrongfully ignored information and documentation in its possession that sinkhole activity had caused damages to the Insured Property.

(j)  NATIONWIDE improperly adjusted MR. and MRS. WALKER'S insurance claim.

30.  Florida Statute §626.9541(1)(i) also sets forth certain requirements and duties which NATIONWIDE must follow.

(a)  Pursuant to Florida Statute §626.9541(1)(i)2, NATIONWIDE had a duty not to make a material misrepresentation to the Insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy.

(b)  Pursuant to Florida Statute §626.9541(1)(i)3a, NATIONWIDE had a duty to adopt and implement standards for the proper investigation of claims.

(c) Pursuant to Florida Statute §626.9541(1)(i)3b, NATIONWIDE had a duty not to misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.

(d) Pursuant to Florida Statute §626.9541(1)(i)3c, NATIONWIDE had a duty to acknowledge and act promptly upon the communications with respect to claims.

(e) Pursuant to Florida Statute §626.9541(1)(i)3d, NATIONWIDE had a duty to not deny claims without conducting a reasonable investigation based on available information.

(f) Pursuant to Florida Statute §626.9541(1)(i)3f, NATIONWIDE had a duty to promptly provide a reasonable explanation in writing to MR. and MRS. WALKER of the basis in the insurance policy, in relation to the facts or applicable law, for denial of their claim or for the offer of a compromised settlement. NATIONWIDE violated this duty.

(g) Pursuant to Florida Statute §626.9541(1)(i)3g, NATIONWIDE had a duty to promptly notify MR. and MRS. WALKER of any additional information necessary for the processing of their claim.

(h) Pursuant to Florida Statute §626.9541(i)(i)3h, NATIONWIDE had a duty to clearly explain the nature of requested information and the reasons why such information is necessary.

31. NATIONWIDE breached the above duties (in paragraphs a – h above) in the claims handing of MR. and MRS. WALKER'S insurance claim in a number of ways, including but not limited to the following:

(a) NATIONWIDE wrongfully failed and/or refused to thoroughly, accurately, and completely investigate and evaluate MR. and MRS. WALKER'S insurance claim for damages;

(b) NATIONWIDE wrongfully failed to respond to MR. and MRS. WALKER'S request for a certified copy of The Policy within fourteen (14) days, pursuant to Florida Statutes.

(c) NATIONWIDE wrongfully denied coverage for the loss and damages that occurred as a result of a covered peril under the policy.

(d) NATIONWIDE wrongfully delayed the proper adjustment and payment of the claim despite the N.S. Nettles' report confirming sinkhole activity.

(e) NATIONWIDE wrongfully did not create appropriate guidelines for the proper investigation, adjustment and payment of MR. and MRS. WALKER'S insurance claim;

(f) NATIONWIDE wrongfully did not follow appropriate guidelines to thoroughly, accurately, and completely investigate, evaluate and pay MR. and MRS. WALKER'S insurance claim;

(g) NATIONWIDE wrongfully cancelled MR. and MRS. WALKER'S Insurance Policy.

(h) NATIONWIDE wrongfully retained outcome orientated engineers and geologist to provide opinions regarding the cause of damages to the Insured Property.

(i) NATIONWIDE wrongfully ignored information and documentation in its possession that sinkhole activity had caused damages to the Insured Property.

(j)   NATIONWIDE improperly adjusted MR. and MRS. WALKER'S insurance claim.

32.   The Florida Administrative Code provides ethical requirements and establishes further duties for the adjustment of claims. Pursuant to Florida Administrative Code Section 69O-220.201(4), the work of adjusting insurance claims engages the public trust.

33.   Pursuant to Section 69O-220.201(4), the work of adjusting claims engages the public trust and an adjuster must put the duty for fair and honest treatment of the claimant above the adjuster's own interest in every instance.

34.   Pursuant to Section 69O-220.201(4)(a), an adjuster shall disclose all financial interest in any direct or indirect aspect of an adjusting transaction.

35.   Pursuant to Section 69O-220.201(4)(b), an adjuster shall treat all claimants equally. An adjuster shall not provide favored treatment to any claimant. An adjuster shall adjust all claims strictly in accordance with the insurance contract.

36.   Pursuant to Section 69O-220.201(4)(c), an adjuster shall never approach investigations, adjustments, and settlements in a manner prejudicial to the insured.

37.   Pursuant to Section 69O-220.201(4)(d), an adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.

38.   Pursuant to Section 69O-220.201(4)(e), an adjuster shall handle every adjustment and settlement with honesty and integrity and allow a fair adjustment or settlement to all parties without any remuneration to himself except that to which he is legally entitled.

39. Pursuant to Section 69O-220.201(4)(f), an adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition thereof.

40. Pursuant to Section 69O-220.201(4)(g), an adjuster shall promptly report to the Office any conduct by any licensed insurance representative of this state, which conduct violates any insurance law or Office rule or order.

41. NATIONWIDE breached the Administrative Code provisions identified above in paragraphs 31-39, through its actions and inactions, during the adjustment of MR. and MRS. WALKER'S insurance claim in numerous ways, including but not limited to the following:

(a) NATIONWIDE wrongfully failed and/or refused to thoroughly, accurately, and completely investigate and evaluate MR. and MRS. WALKER'S insurance claim for damages;

(b) NATIONWIDE wrongfully failed to respond to MR. and MRS. WALKER'S request for a certified copy of The Policy within fourteen (14) days, pursuant to Florida Statutes.

(c) NATIONWIDE wrongfully denied coverage for the loss and damages that occurred as a result of a covered peril under the policy.

(d) NATIONWIDE wrongfully delayed the proper adjustment and payment of the claim despite the N.S. Nettles' report confirming sinkhole activity.

(e) NATIONWIDE wrongfully did not create appropriate guidelines for the proper investigation, adjustment and payment of MR. and MRS. WALKER'S insurance claim;

(f) NATIONWIDE wrongfully did not follow appropriate guidelines to thoroughly, accurately, and completely investigate, evaluate and pay MR. and MRS. WALKER'S insurance claim;

(g) NATIONWIDE wrongfully cancelled MR. and MRS. WALKER'S Insurance Policy.

(h) NATIONWIDE wrongfully retained outcome orientated engineers and geologist to provide opinions regarding the cause of damages to the Insured Property.

(i) NATIONWIDE wrongfully ignored information and documentation in its possession that sinkhole activity had caused damages to the Insured Property.

(j) NATIONWIDE improperly adjusted MR. and MRS. WALKER'S insurance claim.

42. NATIONWIDE has also violated and failed to comply with other duties established under Florida law including Florida Statute §626.878, §627.877, 627.413(3), and 627.7015, as well as duties recognized by NATIONWIDE itself and throughout the insurance industry regarding the proper handling, adjustment, investigation and payment of claims.

43. The conduct by NATIONWIDE, including but not limited to the actions and omissions cited herein, violate the aforementioned duties, Statutes and Administrative code provisions, and as such constitute bad faith and unfair claims practices, and unfair or deceptive trade practices pursuant to Florida Statute §624.155 and §626.9541(1)(i).

44. NATIONWIDE violated the above stated statutes, administrative codes, and duties outlined above, and the violations have occurred with such frequency as to constitute a general business practice.

45. Further, the actions and omissions by NATIONWIDE in the handling/adjustment of MR. and MRS. WALKER'S claim were willful, wanton, and in disregard for the rights of MR. and MRS. WALKER, and occur with such a frequency as to indicate a general business practice, and are in violation of Florida Statutes §624.155 and §626.9541.

46. As a result of NATIONWIDE'S wrongful conduct, in violation of the Florida Statutes and the Florida Administrative Code, and in violation of proper claims handling practices recognized throughout the insurance industry, MR. and MRS. WALKER were required to retain the services of their undersigned counsel and file suit to recover policy benefits. They have agreed to pay their attorneys for their services in prosecuting the underlying claim, and this claim. Florida Statute §624.155(3) provides for the payment of Plaintiffs' attorney's fees in connection with the prosecution of this action.

47. As a further result of the wrongful conduct of NATIONWIDE in violation of Florida Statutes, the Florida Administrative Code, and proper claims handling practices recognized throughout the insurance industry, MR. and MRS. WALKER have suffered damages including but not limited to: unpaid litigation costs in prosecuting their breach of contract action; unpaid attorney's fees in prosecuting the breach of contract action; loss of use of money, loss of time; and other damages caused by the wrongful denial of their claim, the delay in the proper payment of their claim, the wrongful coverage decisions of NATIONWIDE, as well as disgorgement of all profits realized by NATIONWIDE based on its practice of wrongfully denying sinkhole claims.

**WHEREFORE**, the Plaintiffs, JAMES WALKER and KATHLEEN WALKER, sue Defendant, NATIONWIDE, for actual damages, compensatory damages, attorney's fees & cost, and other damages, as well as disgorgement of all profits realized by NATIONWIDE based on its business practice of wrongfully denying sinkhole claims, and such further and other relief as this Court deems appropriate. Further, MR. and MRS. WALKER reserve the right to seek leave to amend their suit to include punitive damages upon an appropriate proffer.

Finally, MR. and MRS. WALKER request a trial by jury on all issues so triable.

October 6, 2009
Date

DANAHY & MURRAY, P.A.

DAVID C. MURRAY, ESQUIRE
Fla. Bar No.: 0542121
901 West Swann Avenue
Tampa, Florida 33606
(813) 258-3600
(813) 258-3321 (fax)
Attorneys for Plaintiffs